Understanding the constraints that this court may consider itself under given the NW Airlines and Porus case, I'm not going to devote substantial time to the question of whether this is an actual malice case. We think it need not be. We think that Minnesota law has diverged from the prior decisions of the 8th Circuit, but that issue has been adequately briefed, and so I'll certainly answer any questions the court has, but I want to concentrate my time on the hypothetical assumption that this is an actual malice case, and Nelson Auto Center is satisfied that we should be allowed to use the Rule 12 standard, which is the only standard that's before the court here today, and there are two substantial reasons why the district court got this wrong, and why our case is one that ought to be allowed to proceed further on an actual malice basis. First of all, it's a republication case, and that sets it out as an unusual fact situation. There was an initial publication on June 24th, and in that initial publication, excuse me, July 24th, in that initial publication, the banner headline and the initial lead-in to the article talked about a state vendor being charged criminally. The Nelsons immediately called attention to KARE 11 that Nelson Auto, the state vendor, was not being charged criminally, and KARE 11 quite promptly fixed it. So... Doesn't that disprove actual malice? It can disprove actual malice as to the July 24th publication. What happened, though, Your Honor, is that there was a fairly prompt correction, and it was quite a sweeping correction. The exact words were an earlier version of this report incorrectly stated, and incorrectly is a synonym or perhaps even a euphemism for falsely stated, but stated that charges had been filed against a state vendor. It has been updated, and these are KARE 11's words verbatim, it has been updated to reflect that the charges involved the state vendor's former manager, not the dealership, and in fact, the website that was quite promptly corrected no longer did the lead-in say state vendor charge, it said the former manager now discharged or was put accurately. So the problem here, given that as of July 27th, approximately, KARE 11 had been put on notice that they had initially made a false statement, and they didn't object to that. They didn't say, well, we're not so sure it was false. You're focusing on the uncorrected link? We're focusing on two different uncorrected things, Your Honor. And the district court said that was at worse than oversight. That's right, and let me address that. What's our standard review of that? I think that's new law created out of whole cloth, Your Honor. The fact that if you... What kind of new law? First Amendment new law? Well, once you're on notice that a statement is false, and here where you've agreed it's with us or with KARE 11 when they said, yes, we published something false, we're fixing it. But what they did was they republished it twice, once by leaving the Facebook post up, but also in a separate article. The complaint clearly alleges this. In a separate article in early November on their website, they put a link back to not the corrected version from July 27th or so, but back to the July 24th version that said state vendor charged with a crime. But there's nothing... I mean, this is made up law. Actual malice requires more than negligence. And so what the district court is saying there is that an oversight is like saying it's negligent. They negligently put the link there. So there's nothing made up out of whole cloth. This is just an application of actual malice. Now, I guess the question then is, is that a factual finding? Is that a legal conclusion? How do we review that? I think it's a legal conclusion because actual malice, and the district court got this exactly right, doesn't require a showing of ill will. It has an or in the definition. It's really only basically a one-element tort, or one-element standard. It's either they knew or they exercised reckless disregard in failing to find out. Or negligence. They just didn't know and messed it up.  What's an issue of law? The issue of law here is that we have- Whether it was an oversight? We have alleged that in November now, CARE 11 knew because we told them that the July 24th article was false. The one that showed the picture of the Nelson Auto Dealership said state vendor is charged and so on. I understand that. So they acknowledge that's false. So now they're probably home free unless they go back and do it again after they already knew. Well, okay. So the district court said that was at worst an oversight. As Judge Strauss says, that's a ruling with regard to actual malice. How do we review that? What's our standard review? Do we look at whether- Do we get a dictionary out and see what they say about oversight or do we say on this whole record the district court was right or wrong on actual malice? Let me put it this way and see if this adequately addresses your question. As of November, they knew that it was false to say state vendor charged with a crime. They said that. They said we've said that incorrectly before and we're fixing it. Once they know that and now they publish again state vendor charged with a crime, they meet the or test in the actual malice. Either they knew or it was willful disregard. They knew. We don't even have to prove the willful disregard. They said we know. There are accidents all the time. Particularly in this day of mass communication by multiple media. And our position, your honor, is that the court, the district court created a defense that doesn't exist. You published a false defamatory statement. You acknowledge that it's false. It has to be actual malice. But that doesn't mean ill will. Once you know something is false and you publish it. Now you're quoting from what Supreme Court case? Quoting from the Minnesota law on the subject, your honor, and the district court. You mean Jadwin? No. The district court quotes that at page 8. The statement is made and I'm not finding the correct page number. But it doesn't, there doesn't have to be actual malice. But we don't know. No, I'm sure it doesn't have to be ill will. But the absence of ill will is pretty telling. So what, where are you pointing me to in the district court's opinion? Because I would have thought this was clearly a question of federal law. The Minnesota can interpret our Supreme Court's actual malice. Page 8 of the district court opinion, your honor, the district court states Minnesota law by saying, moreover, actual malice does not mean that the defendant acted with ill will or spite. So I think the defense that, gosh, we just acted carelessly in republishing this after we kind of promised that we wouldn't and we acknowledged it was wrong, I don't think that's a valid defense. But the problem is, it's black letter law. This court just decided a case out of Missouri where we said it's black letter law that actual malice does not equal negligence. It just doesn't. It doesn't require ill will, but it requires a mens rea, or not a mens rea, but an intent greater than negligence. Right. And in this case, we have no way to judge the basis of their intent because there's been no discovery and we haven't moved beyond Rule 12. Okay, so that's a different issue that I think that you're bringing up. But I think it's a vital issue in this case, your honor. Yeah, but it's a Rule 12 issue. It's not a substantive law issue. We have alleged that they acted without actual malice. We haven't taken any depositions. We don't know if they're going to say, where the district court got the idea that it was mere oversight, we don't know. That's not in the record. Thank you, your honor. Thank you. Mr. Wells. Thank you, your honor. Steve Wells on behalf of Carol Levin, and I'm here with my colleague, Nick Bullard. Let me go right to the issue that the court's been grappling with here. The standard is, are there plausible allegations in this complaint that would suggest that any of the alleged false statements here were made either knowingly or did with a reckless disregard? In other words, was there some evidence that this was intentional on the part of Carol Levin? Now, wait a minute. Yes. Is this a 12B6 dismissal? It is a 12B6 dismissal. So don't talk about evidence. We don't have evidence. I should say plausible allegations. I misspoke. Plausible allegations. Why isn't republication a plausible allegation? Because there's no plausible allegation that would suggest that this was anything but an  So what? Then it fails. No, no. Come on. Then it fails. I mean, you're taking Iqbal and Twobly and throwing out Rule 8 with that argument. No, not at all, Your Honor. In other words, there has to be, because this is an actual malice case, there have to be allegations in the complaint that would plausibly suggest that Carol Levin intended to convey to the public something that was false or something that they entertained serious doubts as to. And you don't think it gets you there when they knew it and there's at least, you know, there's an inference that they consciously disregarded when they republished the link or put out the link with the wrong link? Well, let me go back to just a couple of points here, Your Honor. So the link that was, to be clear, what happened here was there is a website story and there is a Facebook story. Both of those in the second line, and this is joint appendix and 25 and 30, both of those identify the vendor that's being talked about here as Jerry Warner, the fleet manager. And that shows up in the district court's opinion. So in the very publication itself, Carol Levin identifies the vendor that they're talking about. It's the subheading of the first page and it's also in the text of the article itself. So did they have to issue a correction? No, they probably didn't have to issue a correction. But we start from the document itself. And that's critical because as this court has said in other cases, you consider the false, allegedly false statement in the context in which it's made. And you also consider the documents that are embraced by the pleadings, which is the article itself. And in the article itself, it identifies the vendor as Jerry Warner, former fleet manager of Nelson Auto. So it's, we're starting from the, the plaintiff here is starting from the wrong proposition. It's starting from the proposition that the original article was knowingly false and it's just not true. There's, there's no basis for that in the article itself. Now what happened apparently was this, the article, the correction provides evidence. Well the correction just said, the defendant admitted, the defendant admits that the use of the word vendor was probably legally imprecise in the sense that vendor can mean different things. Vendor could mean a seller. This is your argument. What is the fact of the correction? The fact of the correction says that the publication made a false. It didn't say false. It said it was erroneous. Well we can read what the correction says, but what it says is it clarifies that the vendor that they're talking about is Jerry Warner and not Nelson Auto. And that was also clear from a fair reading of the article without the correction. You can tell from the subheading, you can tell from the text of the article, it's in Joint Appendix 25 through 30. It identifies Jerry Warner as the person that they're talking about. So why did they issue the correction? Your Honor, they did. And I don't, I don't know why it's even phrased as a correction, but it is. But that's what happens. And then the article. But we're talking about Rule 12b-6. Yes. And, and is, is the correction pled in this? Must be. The correction, the correction is mentioned in the case law. Why isn't, why isn't it a plausible inference from the fact of the correction that the newspaper admitted falsity in the, in the original article? In which case, the republication was, as we've been talking about, why doesn't it, why isn't it that a plausible inference of actual malice or assertion, allegation? Because it wasn't republished. It wasn't republished. That's the point. You won't find the word republication in this brief. The Facebook, the Facebook page was left up. That was the problem. They only corrected one of the sites and not the other. That's what the, that's what the allegations are. And what they're complaining about is that in November of 2017, they republished a line. Why don't we need some discovery on whether, why, the reason for that? Because there are no. Maybe it's because the reporter convinced the editor that this was really a bad guy and you can correct, maybe don't correct at all. Because there are no plausible allegations that that's what occurred. And it's not, but this is a, this is an actual malice case. All I'm talking about is inference. This is an actual malice case involving the press in a matter of public importance. And there's a clear and convincing standard here. And the, there have to be allegations that it was something more than being wrong. Why is it a, why is it any more plausible that this, that this was just an oversight? There needs to be some allegation that there was a motive, that there was some intent, that there was something. So the press, the press gets fortified Iqbal is what you're arguing. No, I'm simply arguing, Your Honor, that there. Lawyers and district judges are over-reading Iqbal all over the country. Well, Your Honor, I think in a, in a First Amendment case like this one, there, there. You want a fortified Iqbal. There is no, well, if you want to call it clear and convincing standard, a fortified Iqbal, it's a clear and convincing standard. But the, the, the fact of the matter is, there is no allegation of anything about why KARE 11 would have been motivated to do this. Why, how KARE 11 knew it was doing this, in a way. In other words, there has to be something other than the fact that it happened. That's all they're arguing. The original, the original post was left up and it happened. And there's no inference that can be drawn, logical inference that can be drawn from that, that that was actual malice. There has to be more. It's not a, there have to be plausible allegations that it was left up for some particular reason, whether it was, I mean, I don't know, I don't know what the motivation would be, but certainly there's nothing pled about this. And that's what the district court was referring to. And the district court, again, I come back to this, to this point. The district court hinged its decision both on the fact that the article itself and the headline talk about, clarify that it's, that it's Mr. Warner who is the target of the criminal charges. And I, and I think that's important. The correction further clarifies that, but the article itself contains the, the statement that the charge is against the former fleet manager, Jerry Warner. So the two principles that I think are really critical from an analytical standpoint here are number one, it is the, this is a subjective analysis. And in a sense, you look at the subjective intent of the, the media here. What are the allegations about the subjective intent? There are no plausible allegations about the subjective intent here. That would suggest that they were motivated by, by some means to, to mislead the public or to make a false statement. And then the second principle, which I think is critical for the court to, to take into account, is that it, the court has to consider the documents that are embraced by the pleadings. And that would include both the, the cover of the Facebook page. I'm not sure how that's, probably not using the right social media terminology, but it's the very first page where it says specifically that it's the former fleet manager. And then the, the body of the article itself, which says that it's, identifies him as Jerry Warner. All of that negates intent. All of that negates actual malice. And in the face of that un, uncontroverted material that negates actual malice, there is no plausible allegation made that would contradict that. And that's our argument. Thank you. Thank you, Counselor. Mr. Ruffer. I'll give you a minute. Thank you, Your Honor. I appreciate that. And two things very quickly. First of all, to be clear, and I believe the court understands this, it wasn't just leaving the Facebook page, the Facebook post up. It was also republishing the original wrong article. And the simple question is why? And to reach the conclusion that it was negligence or overlooked. We don't know that. There hasn't been discovery. Second. What about, you know, I want to get to the point that you didn't cover in your original opening, which was the body of the article was absolutely accurate. Yes, Vendor was imprecise. But the body of the, I think you can see that the body of the article identified the particular fleet manager who was engaged in this behavior. So why is that actual malice? It may eventually identify it in our complaint. We don't allege that the June 24th, July 24th article included that. And it's not clear to me that the Facebook. But we can look at the, if it's encompassed by the pleadings, we can look at the article itself and the article itself, as I recall, the original article mentioned that mentioned the fleet manager. I think I think the original article wasn't the original web article wasn't preserved. But yes, if it mentioned the fleet manager in the original article, it certainly did in the original Facebook. And our position on that is simply they, you know, probably their correction was one that they made candidly before they talked to their lawyers about should we admit this is incorrect, but they admitted it was incorrect. And I think we get to go forward and find out why. The last point I would make the paragraphs 20 through 23 of the complaint talk about how this appeared to be a continued vendetta and how you have to read 17 pages into their investigative article to see oh, the dealership wasn't charged. And so I think I think there's a lot of evidence to be discovered here as to what their state of mind is. And I think we should be permitted to go forward and do that. Thank you very much, Your Honors. Thank you, counsel. The case has been well briefed and argued and we will take it under advisement. Does that complete the morning service? Yes, Your Honor. Very good. The court will be in recess until 8.30 tomorrow morning.